UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACI B.,

                    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00746 EAW

**INTRODUCTION**

Represented by counsel, Plaintiff Traci B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 10) is denied.

**BACKGROUND**

Plaintiff protectively filed her application for DIB on October 22, 2020. (Dkt. 3 at 117).[1]  In her application, Plaintiff alleged disability beginning December 22, 2015, due to back injury, kidney disease, depression/anxiety, hypothyroidism, arthritis, and degenerative disc disease. (*Id.* at 99-100). Plaintiff's application was initially denied on April 9, 2021. (*Id.* at 138-43). A telephone hearing was held before administrative law judge ("ALJ") William T. Ross on March 30, 2022. (*Id.* at 42-73). On April 26, 2022, the ALJ issued an unfavorable decision. (*Id.* at 17-36). Plaintiff requested Appeals Council review; her request was denied on May 30, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990) (holding that review of the Secretary's decision is not *de novo* and that the

Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)

(citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467,

470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not

disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the

claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained

basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC

permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§ 404.1520(f). If the claimant can perform such requirements, then he or she is not

disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the

burden shifts to the Commissioner to show that the claimant is not disabled. *Id*.

§ 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the

claimant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy" in light of the claimant's age, education, and

work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted);

*see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step

sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that

Plaintiff last met the insured status requirements of the Act on December 31, 2020. (Dkt.

3 at 22).  At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity since November 25, 2019, the alleged onset date.[2]  (*Id*. at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

"degenerative disc disease of the lumbar spine; status post laminectomy (2013); status post

L5-S1 fusion (2015); left carpal tunnel syndrome; and left-hand osteoarthritis."  (*Id.* at 23).

The ALJ further found that Plaintiff's medically determinable impairments of degenerative

disc disease of the cervical and thoracic spine, mild left knee osteoarthritis,

hypothyroidism, radial styloid tenosynovitis, hypersomnia, kidney disease, and major

depressive disorder, agoraphobia with panic disorder, and anxiety disorder, were non-

severe.  (*Id*. at 23-25).

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.

at 25).  The ALJ particularly considered the criteria of Listings 1.15, 1.16, and 1.18 in

reaching his conclusion.  (*Id.* at 25-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff:

> could not climb ladders, ropes, or scaffolds.  [Plaintiff] could frequently
> handle and finger with the left upper extremity.  [Plaintiff] could occasionally
> push and pull with the left lower extremity.  [Plaintiff] could occasionally
> kneel, stoop, crouch, crawl, and climb stairs/ramps.  [Plaintiff] could
> occasionally balance on narrow, unsteady, or erratic surfaces.  [Plaintiff]
> should avoid concentrated exposure to extreme cold, wetness, unprotected
> heights, and dangerous machinery.

---

[2]    At her administrative hearing, Plaintiff amended her alleged onset date of disability
to November 25, 2019.  (Dkt. 3 at 20; *see also id*. at 46).

(*Id.* at 26).  At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff could perform her past relevant work as a secretary, as it did not require the performance of work-related activities precluded by Plaintiff's RFC.  (*Id.* at 35).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from November 25, 2019, the alleged onset date, through December 31, 2020, the date last insured.  (*Id*. at 35-36).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ erred in assessing the severity of Plaintiff's mental impairments.  (Dkt. 8-1 at 13-18).  Specifically, Plaintiff contends that her mental impairments meet the *de minimis* threshold to be considered severe at step two of the sequential analysis, and that the ALJ compounded his error when he assessed a mental RFC with no limitations.  (*Id*. at 13).  In response, the Commissioner contends that substantial evidence supports the ALJ's step 2 finding, that Plaintiff did not receive mental health treatment during the relevant period—*i.e.*, before her date last insured of December 30, 2020—and that the ALJ properly evaluated opinion evidence in the record.  (*See* Dkt. 10-1).  As further explained below, the Court finds that the ALJ erred in his assessment of the limitations caused by Plaintiff's mental health impairments, and therefore remand is required for further administrative proceedings.

At the second step of the sequential analysis the ALJ considers "whether the claimant has a severe impairment which significantly limits h[er] physical or mental ability to do basic work activities." *Talavera*, 697 F.3d at 151 (quotations omitted).  "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F.

Supp. 3d 253, 265 (N.D.N.Y. 2012).  "[T]he standard for a finding of severity under step two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."  *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)) (alterations omitted).  Despite this low standard, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'"  *Taylor*, 32 F. Supp. 3d at 265 (quotations and citation omitted).  "While a mental impairment rated as 'none' or 'mild' generally will not qualify as 'severe,' those rated as 'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step two, thus requiring the [ALJ] . . . to proceed to the third step in the sequential process."  *Schafenberg*, 858 F. App'x at 456 (citing 20 C.F.R. § 404.1520a(c)(4)-(d)(1)).

At step two, the ALJ concluded that Plaintiff's medically determinable impairments of major depressive disorder, agoraphobia with panic disorder, and anxiety disorder, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and therefore they were non-severe impairments.  (Dkt. 3 at 24).  In reaching this conclusion, the ALJ considered the broad functional areas of mental functioning, *i.e.*, the "paragraph B" criteria.  (*Id*.).  The ALJ concluded that Plaintiff had no evidence of limitations in the areas of understanding, remembering, or applying information, and in the area of interacting with others.  (*Id*.).  Plaintiff had mild limitations in the areas of concentrating, persisting, or maintaining pace,

and also in the area of adapting or managing herself. (*Id*. at 25). The RFC does not include any mental functional limitations. (*See id*. at 26).

The Court notes that, even when an ALJ errs by finding an impairment non-severe at step two, the error is generally harmless when the ALJ goes on to consider and account for that impairment in the subsequent steps of the sequential evaluation. *See O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014) (explaining that where the ALJ fails to note a particular impairment at step two but finds other severe impairments and considers the omitted impairment in the subsequent steps, "any error was harmless"). Here, the ALJ considered Plaintiff's mental impairments at subsequent steps of the sequential analysis; however, as explained below, the ALJ's consideration of these mental impairments, including the ALJ's evaluation of the opinion evidence, is not supported by the record.

Christine Ransom, Ph.D., the consultative examiner, examined Plaintiff on January 18, 2021. (Dkt. 3 at 484). Dr. Ransom opined that Plaintiff had moderate limitations for understanding, remembering, or applying simple or complex directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, co-workers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining well-being, and maintaining awareness of normal hazards and taking appropriate precautions. (*Id*. at 486-87).

The ALJ found Dr. Ransom's opinion to be unpersuasive because she "did not express her proposed limitations in vocationally relevant language," but rather "indicated the claimant would have a range of moderate mental limitations in the areas indicated in

her form." (*Id*. at 33).  The ALJ also found the limitations assessed by Dr. Ransom were inconsistent with Plaintiff's limited, conservative, and partially effective mental health treatment history, her largely benign findings upon baseline mental status examinations, and her strong range of reported daily activities.  (*Id*.).  The Court finds that the ALJ's proffered reasons for finding this opinion unpersuasive are not supported by the record.

First, it is unclear what the ALJ means by the statement that Dr. Ransom did not express her proposed limitations in "vocationally relevant language."  The opinion offered by Dr. Ransom plainly addresses the common work-related areas of mental functioning— *i.e.*, the ability to understand, remember, or apply simple or complex directions and instructions, use reason and judgment to make work-related decisions, interact with supervisors, co-workers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being.  Without further explanation from the ALJ on this point, it is unclear what the ALJ means by "vocationally relevant language."

Further, as a consultative examiner, Dr. Ransom is paid by the Commissioner to conduct mental examinations to assist in the disability determination, and it is well-settled that the opinions of consultative examiners, who are experts in the field of disability, may constitute substantial evidence supporting an RFC assessment.  *See Thomas H. v. Comm'r of Soc. Sec.*, 675 F. Supp. 3d 330, 338 (W.D.N.Y. 2023) ("it is well-settled that the opinions of state agency medical consultants may serve as substantial evidence supporting an RFC").  Finally, to the extent the ALJ takes issue with Dr. Ransom's use of the term

"moderate" to describe Plaintiff's limitations, a consultative examiner's use of the terms "mild" or "moderate" is not impermissibly vague when the opinion is supported by an examination supporting those limitations. *Taylor v. Comm'r of Soc. Sec.*, No. 17-CV-1011-MJR, 2019 WL 457718, at *4 (W.D.N.Y. Feb. 6, 2019) ("The Court agrees with [plaintiff]'s argument in that [the consultative examiner]'s use of the term 'moderate' could constitute vagueness.  However, [the consultative examiner]'s opinion of 'moderate' limitations does not stand alone.  It is based on the objective MRI results and the in-person physical examination of the Plaintiff.").   Here, Dr. Ransom's opinion is accompanied by an examination of Plaintiff, and therefore the Court does not find the use of the term "moderate" to be vague.  Without further explanation as to why the ALJ found Dr. Ransom's use of the term "moderate" to be unclear, the ALJ's reasoning for finding the opinion unpersuasive is not supported by the record.

The ALJ also stated that he did not credit Dr. Ransom's opinion because it was inconsistent with Plaintiff's limited mental health treatment and history, and also Plaintiff's daily activities and baseline mental status findings.  (Dkt. 3 at 33).  The Commissioner relatedly argues that Plaintiff did not receive any mental health treatment during the relevant period of disability.  (*See* Dkt. 10-1 at 16).   As explained below, the characterization that Plaintiff has a limited or minimal history of mental health issues is not supported the record.

The relevant period of disability is between November 25, 2019, and December 31, 2020 (Dkt. 3 at 23), and the record before the Court demonstrates that Plaintiff had ongoing mental health treatment during that period.  For example, in January 2021, Plaintiff

reported to Dr. Ransom that she "currently receives medication from her primary care physician for the last 18 months for depression" (*see* Dkt. 3 at 484), and therefore that treatment would date back to approximately June 2019 and fall within the relevant period. Plaintiff's history of mental health treatment is extensive, including in 2006 a hospitalization for a suicide attempt. (*Id*. at 767 (intake note describing that Plaintiff had "a brief inpatient hospitalization for attempted suicide," and that she had been very depressed since her son died of a drug overdose)). Plaintiff received mental health treatment from Randal M. Seigel, LCSW-R for depression, panic attacks, and chronic pain beginning on February 21, 2019, but she was discharged in June 2019, because she was not attending appointments due to insurance coverage issues. (*Id*. at 788-89). Plaintiff also treated with her primary care physician Nitin Arora, M.D. during that time, and she was prescribed Duloxatine for depression through August 2021. (*Id*. at 789, *see also id*. at 508-12).

In August 2021, Plaintiff began psychiatric medication management with Hillel Glover, M.D., and she resumed mental health counseling on February 19, 2021, with Ashely Stowell, LMSW. (*Id*. at 791-95 (intake form dated February 21, 2021, for Ms. Stowell, noting referral from Dr. Aurora for depressive symptoms, and noting that Plaintiff "struggled with symptoms for years," and that her symptoms have impaired her ability to work and her relationships)). Plaintiff treated with Ms. Stowell until August 5, 2021, when Ms. Stowell left the practice. (*Id*. at 1095). On September 7, 2021, Plaintiff was transferred

to Rachel Mieney, LCSW-R, for mental health counseling.  (*Id*. at 1089-92).  Plaintiff saw

Ms. Mieney through February 2, 2022, shortly before the hearing date.  (*Id*. at 1211-14).

Although some of these records reflect mental health treatment occurring after

December 2020, the Court does not find that these records are irrelevant to the period of

disability.  For example, these records reflect ongoing treatment for an ailment that existed

during the relevant period of disability, rather than diagnosing some new ailment.  *See,*

*e.g., Mura v. Colvin*, No. 16-CV-6159P, 2017 WL 2543939, at *5 (W.D.N.Y. June 13,

2017) (explaining that "a treating physician's opinion need not be rejected solely because

it predates the relevant time period"); *see also Newbury v. Astrue*, 321 F. App'x 16, 18 n.2

(2d Cir. 2009) (evidence generated after an ALJ decision is not irrelevant solely because

of timing, and "subsequent evidence of the severity of a claimant's condition may

demonstrate that during the relevant time period, the claimant's condition was far more

serious than previously thought." (alterations, quotations, and citations omitted)).  The

written determination lacks meaningful explanation as to why the ALJ apparently found

these records did not support at least some minimal mental functional limitations in the

RFC.

In sum, the Court finds the ALJ's assessment of Plaintiff's mental health

limitations—and particularly his rationale for rejecting Dr. Ransom's opinion, which is the

only opinion offered by an examining physician as to Plaintiff's mental limitations—is not

supported by the record.  Accordingly, remand is required.  On remand, the ALJ shall re-

examine Dr. Ransom's opinion, and if he continues to find the opinion to be unpersuasive,

he must offer a more fulsome explanation that is supported by the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8)

is granted to the extent that the matter is remanded for further administrative proceedings,

and the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied.  The

Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 15, 2024
        Rochester, New York